UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF AMERICA, N.A., | Case No. 2:16-cv-00405-KJD-BNW |
| Plaintiff, | ORDER |
| v. | |
| DIAMOND POINT HOMEOWNERS' ASSOCIATION, *et al*, | |
| Defendants. | |

Presently before the Court is Defendant SFR Investments Pool 1, LLC's Motion for Summary Judgment (#97). Plaintiff Bank of America, N.A. ("BANA"), filed a response in opposition (#103) to which SFR replied (#110).

Also, before the Court is Plaintiff Bank of America, N.A.'s Motion for Summary Judgment (#98). Defendant Diamond Point Homeowners' Association ("Diamond Point" or "the Association") filed a response in opposition (#102) as did Defendant SFR Investments Pool 1, LLC ("SFR") (#105) to which BANA replied (#108).

Finally, before the Court is Defendant Diamond Point Homeowners' Association's Motion for Summary Judgment (#99). BANA filed a response in opposition (#104) to which Diamond Point replied (#109).

I. Facts

Deborah Callaway and Michael Ortiz ("Borrowers") financed their property located at 1204 E. Hammer Lane, North Las Vegas, Nevada with a $264,499 loan from Universal American Mortgage Company. They secured the loan with a deed of trust. In 2011, the deed of trust was assigned to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP. On July 1, 2011, BAC Home Loans Servicing, LP merged with an into BANA.

The property is subject to and governed by the Declaration of Covenants, Conditions and Restrictions and Grant of Easements ("CC&Rs") for Diamond Point Homeowners' Association. Eventually, Borrowers defaulted on their obligation to pay assessments of approximately $31 per month under the CC&Rs to Diamond Point. On June 2, 2011, Diamond Point through its foreclosure agent, Defendant Nevada Association Services ("NAS"), recorded notice of delinquent assessment lien. NAS recorded notice of default and election to sell on July 22, 2011. The notice stated that Borrowers owed $1,999.28 plus costs and fees without specifying which part was the superpriority lien.

On August 24, 2011, BANA's counsel, Miles Bauer Bergstrom & Winters LLP ("Miles Bauer") offered to pay the superpriority lien and asked for a total. In response, NAS provided an account statement which reflected that Borrowers owed $31 per quarter in assessments. The statement did not indicate that they owed any maintenance or nuisance abatement charges. Based on the ledger, BANA calculated the superpriority amount as $279.00 (nine months of assessments) and tendered that amount by check to NAS on September 22, 2011. NAS received, but rejected, BANA's tender.[1]

Notice of sale was recorded on March 20, 2012. Foreclosure sale was conducted on or about July 27, 2012. SFR purchased the property for $8,000.00. The parties now disagree as to whether Diamond Point's foreclosure extinguished BANA's lien or whether SFR purchased the property subject to the lien.

II. Standard for Summary Judgment

The purpose of summary judgment is to avoid unnecessary trials by disposing of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986); Nw. Motorcycle Ass'n v. U.S. Dept. of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). It is available only where the absence of material fact allows the Court to rule as a matter of law. Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 322. Rule 56 outlines a burden shifting approach to summary

---

[1] Though SFR has disputed the adequacy of this evidence, it never disputed the factual accuracy of these allegations. SFR entirely fails to address what the amount of the superpriority portion of the lien would be at any point. SFR also never address, nor does Diamond Point, how the Borrowers' payments, made before the foreclosure sale totaling $895.00, were accounted for.

judgment. First, the moving party must demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to produce specific evidence of a genuine factual dispute for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine issue of fact exists where the evidence could allow "a reasonable jury [to] return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court views the evidence and draws all available inferences in the light most favorable to the nonmoving party. Kaiser Cement Corp. v. Fischbach & Moore, Inc., 793 F.2d 1100, 1103 (9th Cir. 1986). Yet, to survive summary judgment, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

III. Analysis

Bank of America argues that its deed of trust survived Diamond Point's nonjudicial foreclosure for four discrete reasons: (1) the bank tendered—or was excused from tendering— the superpriority portion of the HOA lien; (2) the association foreclosed under an unconstitutional version of NRS § 116 and violated due process as-applied; (3) the Supremacy Clause preempts NRS § 116; and (4) the sale was unfair and should be equitably set aside under Shadow Canyon. Because the Court finds Bank of America's tender argument dispositive, it need not reach the bank's other arguments. Diamond Point and SFR, on the other hand, moves for summary judgment on their quiet title claims. They seeks a declaration that Diamond Point's foreclosure extinguished both BANA's and Borrower's interest in the property. Further, they assert this action is barred by the statute of limitations.

A. Statute of Limitations

Before reaching the merits of BANA's motion, SFR and Diamond Point urge the Court to deny this action as untimely. Defendants argue that BANA's quiet title and declaratory relief claims are subject to a three-year statute of limitations, which began accrual at the time Diamond Point foreclosed— July 27, 2012. If a three-year statute of limitations applies, the bank had until July 27, 2015 to bring its claims. BANA filed its complaint on February 26, 2016. Accordingly, Defendants argue that BANA's claims are time-barred. The crux of Defendants' argument is that BANA's claims are not true quiet title claims because the bank never actually held title in the

1 property. The bank is actually bringing a "quintessential wrongful foreclosure" action which is a
2 right created by statute. According to NRS § 11.190, the applicable statute of limitations for
3 liability created under statute is three years. NRS § 11.090(3)(a). Defendants, therefore, claim
4 that BANA's claims are time-barred.

5      Defendants are incorrect. Admittedly, courts in this district disagree on the appropriate
6 statute of limitations for this type of claim. BANA does not allege that it ever held title. Rather,
7 the bank uses the quiet title claim as a vehicle to assert the validity of its preexisting interest in
8 the Property. Despite the district's split, no Court has found that a three-year statute of
9 limitations is appropriate for these claims. They disagree whether a four-year or a five-year
10 limitations period applies.[2] The disagreement boils down to whether a claim in the context of a
11 nonjudicial foreclosure constitutes a claim to *recover* property under NRS § 11.080.[3] If so, a
12 five-year limitations period applies. Both the Ninth Circuit and the Nevada Supreme Court have
13 applied a five-year statute of limitations to these actions. See Weeping Hollow Ave. Tr. v.
14 Spencer, 831 F.3d 1110, 1114 (9th Cir. 2016) (party may bring claim challenging the HOA
15 foreclosure within five years of the sale); Las Vegas Dev. Grp., LLC v. Blaha, 416 P.3d 233, 237
16 (Nev. 2018) (a claim "seeking to quiet title . . . is governed by NRS § 11.080, which provides for
17 a five-year statute of limitations").

18      Nevertheless, a minority of courts have determined that § 11.080 does not apply to this
19 type of quiet title claim because the bank or lender never actually held title—nor do these banks
20 claim to have ever held title. See U.S. Bank, N.A. v. SFR Invs. Pool 1, LLC, 376 F.Supp.3d

---

[2] Compare Bank of New York Mellon v. Khosh, No. 2:17-cv-0957-MMD-PAL, 2019 WL 2305146 (D. Nev. May 30, 2019) (applying five-year statute of limitations to quiet title claim under NRS § 11.070); Newlands Asset Holding Tr. v. SFR Invs. Pool 1, LLC, No 3:17-cv-0370-LRH-WGC, 2017 WL 5559956 (D. Nev. Nov. 17, 2017) (same); Nationstar Mortg., LLC v. Falls at Hidden Canyon Homeowners Ass'n, No. 2:15-cv-1287-RCJ-NJK (D. Nev. June 14, 2017) (same); HSBC Bank USA, N.A. v. Green Valley Pecos Homeowners Ass'n, Inc., No. 2:16-cv-0242-JCM-GWF, 2017 WL 937723 (D. Nev. Mar. 9, 2017) (same) with U.S. Bank v. SFR Invs. Pool 1, LLC, --- F.Supp.3d ---, 2019 WL 1383265 (D. Nev. Mar. 27, 2019) (applying four-year catchall provision under NRS § 11.220); Nationstar Mortg., LLC v. Safari Homeowners Ass'n, No. 2:16-cv-0542-RFB-CWH, 2019 WL 121960 (D. Nev. Jan. 6, 2019) (same); Bank of America, N.A. v. Country Garden Owners Ass'n, No. 2:17-cv-1850-APG-CWH, 2018 WL 1336721 (D. Nev. Mar. 14, 2018).

[3] "No action for the recovery of real property, or for the recovery of the possession thereof other than mining claims, shall be maintained, unless it appears that the plaintiff or the plaintiff's ancestor, predecessor or grantor was seized or possessed of the premises in question, within five years before the commencement thereof."

1085, 1089–91 (D. Nev. 2019). Those courts have found that NRS § 11.220's so-called "catch-all" provision imposes a four-year statute of limitations because the bank cannot recover property to which it never held title. See NRS § 11.220 (where the Nevada Revised Statutes are silent regarding a statute of limitations, a four-year period applies).

In any event, the Court need not resolve this dispute here. BANA's claims are timely under either § 11.220's four-year catch-all provision or § 11.080's five-year period for recovery of real property. At the latest, BANA's claims began accrual on July 27, 2012, when NAS recorded the trustee's deed upon sale. See G & H Assocs. v. Ernest W. Hahn, Inc., 934 P.2d 229, 233 (Nev. 1997) (accrual begins when the plaintiff first knew or should have known of the injury). BANA brought this suit in February of 2016—less than four years from the date of accrual. Therefore, the Court need not definitively decide whether BANA's quiet title claim is subject to a four-year or five-year statute of limitations because its claim is timely under either. Therefore, Defendants' motions for summary judgment based on application of the statute of limitations are denied.

B. Tender

BANA argues that its tender of the superpriority portion of Diamond Point's lien before the association's foreclosure preserved its deed of trust from extinguishment. The bank's argument hinges on the check that Miles Bauer sent NAS after receiving the association's notice of foreclosure. In response to that notice, Miles Bauer contacted NAS and requested the superpriority balance and offered to pay whatever that balance was. NAS responded with an account statement that itemized all the outstanding fees on the property's account. From that statement, Miles Bauer calculated nine months of association assessments and remitted NAS a check for that amount, $279.00. NAS rejected the check and foreclosed anyway.

The Nevada Supreme Court has addressed whether valid tender preserves a lender's deed of trust in a series of recent cases. In Bank of America, N.A. v. SFR Invs. Pool 1, LLC, the Court definitively held that a lender's valid tender prior to the association's foreclosure preserves the lender's first deed of trust. 427 P.3d 113, 118 (Nev. 2018) ("Diamond Spur"). Tender is valid if (1) it pays the entire superpriority lien (id. at 117) and (2) it is unconditional or insists only on

conditions the tendering party has a right to insist upon (id. at 118). The tendering party is under no obligation to "keep [the tender] good" or deposit the tender into an escrow or court-established account. Id. at 120–21. At bottom, valid tender voids the association's foreclosure of the superiority portion of the association's lien, which results in the buyer taking the property subject to the lender's first deed of trust. Id. at 121.

Then, in Bank of America, N.A. v. Thomas Jessup, LLC Series VII, the Nevada Supreme Court reaffirmed the tender rule and carved out an exception where an association makes clear that it will reject tender. 435 P.3d 1217 (Nev. 2019). Thus, a lender can preserve its deed of trust against an association's foreclosure by calculating the superpriority balance and tendering payment for that amount. Diamond Spur, 427 P.3d at 117. Or, even if money never changes hands, the lender's deed of trust survives foreclosure if it attempted to tender payment, but the association rejects that payment. Thomas Jessup, 435 P.3d at 1220. This Court has adopted the Nevada Supreme Court's reasoning. See RH Kids, LLC v. MTC Fin., 367 F.Supp.3d 1179, 1185–86 (D. Nev. 2019); Deutsche Bank Nat'l Tr. Co. v. SFR Invs. Pool 1, LLC, No. 2:17-cv-0457-KJD-GWF, 2018 WL 5019376 (D. Nev. Oct. 16, 2018).

The facts here are similar to Diamond Spur and Jessup, and the result is the same; BANA's deed of trust survived the association's foreclosure. Defendants bring a litany of arguments challenging Miles Bauer's tender. Those arguments break down into three main groups. First, SFR argues that NRS 116.1104 and 116.1108 make BANA's tender invalid. Second, SFR argues the Court is sitting in equity when considering the bank's tender, therefore, waiver, estoppel, and unclean hands counsel against finding for BANA. Finally, Defendants challenge the validity of the tender itself and the admissibility of BANA's evidence of that tender. Defendants' claim that the business records have not been adequately authenticated.

None of SFR's arguments dissuade the Court from applying Diamond Spur and finding for BANA. SFR's arguments that NRS § 116.1104 and 1108 prohibit tender contradict the Nevada Supreme Court's holdings in Diamond Spur and Jessup. The Nevada Supreme Court found for banks that had tendered with correspondence nearly identical to the correspondence in this action. The language of the correspondence did not constitute a contract or agreement within

the meaning of §§ 116.1104 or 1108. An attempt by the bank to clarify that its payment was intended to satisfy the superpriority lien and avoid extinguishing its security interest did not vary NRS Chapter 116 by agreement. Under SFR's logic, no tender or cure of the default could ever be possible except at the mercy of the HOA. Accordingly, SFR's motion for summary judgment on this issue is denied.

Defendants argue that equity favors them when considering BANA's tender.[4] However, equity is not in consideration when deciding whether the sale is void, because the lien was satisfied by BANA's tender. See, e.g., Diamond Spur, 427 P.3d at 120-21 (Nevada Supreme Court did not balance equities). Further, even if the Court were required to balance the equities, which it is not required to do, none of the evidence outweighs Diamond Point's and NAS's rejection of Bank of America's tender. Simple acceptance would have ended seven (7) years of litigation.

Finally, Plaintiff's citation to the affidavit of Kendis is more than adequate on a motion for summary judgment. SFR argues that BANA failed to authenticate the account ledger that it used to calculate nine-months of Diamond Point's past-due assessments. The argument is two-fold: the account statement is inadmissible hearsay and the affidavit authenticating the statement is defective because Miles Bauer was not custodian of records for Diamond Point. Neither argument renders these documents inadmissible. First, the business records exception does not require that the custodian of record for the business that created the document authenticate that document. See MRT Const. Inc. v. Hardrives, Inc., 158 F.3d 478, 483 (9th Cir. 1998). Like here, an official from another entity who relied upon the accuracy of the business record may properly authenticate it. Id.; see also Fed. R. Evid. 803(6). Accordingly, the account statement provided by NAS to Miles Bauer is not inadmissible hearsay.

BANA has met its burden with the affidavit. Kendis, the affiant, had adequate knowledge and information to authenticate these business records. Kendis stated he was familiar with the type of records maintained by Miles Bauer in connection with [this] loan. He attested that the

---

[4] Clearly the uncontroverted evidence shows that if equity favors anyone in this action, it would be the Borrowers who made four large payments that appear to have more than satisfied overdue assessments but were still foreclosed upon. No explanation has even been attempted by Defendants.

ledger was "a Statement of Account from [NAS]" … "received by Miles Bauer" in response to correspondence sent to NAS on August 24, 2011. See Plaintiff's Mtn. for Partial S. Judgment (#98), Exhibit G. The Court, therefore, overrules SFR and Diamond Point's objection to BANA's evidence.

In sum, BANA's deed of trust survived Diamond Point's trustee's sale because the bank's tender cured the superpriority lien balance before foreclosure. That tender voided Diamond Point's foreclosure as to BANA's interest in the property. Therefore, SFR acquired the property subject to BANA's existing deed of trust. The Court, therefore, grants Plaintiff Bank of America's motion and declares that its deed of trust still encumbers the property.[5]

### C. BANA's Remaining Wrongful Foreclosure and Breach of NRS § 116 Claims

After granting BANA's motion and finding that its deed of trust survived Diamond Point's foreclosure, only BANA's claims for wrongful foreclosure and breach of NRS § 116 against NAS and Diamond Point and the bank's injunction claim against SFR remain. As for BANA's wrongful foreclosure and breach of NRS § 116 claims, the bank pleaded those claims in the alternative to its quiet title and declaratory relief claims. Because the Court has granted judgment on the bank's quiet title claim, it need not consider alternative claims. Accordingly, BANA's wrongful foreclosure and breach of NRS § 116 claims against Diamond Point and HAS are dismissed.

Likewise, the Court dismisses BANA's injunctive relief claim against SFR. Although styled as a stand-alone cause of action here, an injunction is a remedy. See Jensen v. Quality Loan Svc. Corp., 702 F.Supp.2d 1183, 1201 (E.D. Cal. 2010); In re Wal-Mart Wage and Hour Emp't Practices Litig., 490 F.Supp.2d 1091, 1130 (D. Nev. 2007). Additionally, an injunction at this point is unnecessary. The Court has already quieted title and provided the declaratory relief the bank sought. Therefore, the Court dismisses BANA's injunctive relief claim against SFR.

Finally, the Court dismisses Counterclaimant SFR's claims against Counterdefendant

---

[5] Because the Court grants Plaintiff's motion for summary judgment on its claim that it validly tendered an amount to satisfy the superpriority lien and grants the motion, it is unnecessary to reach the other grounds cited in its motion for summary judgment.

BANA.

IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant SFR Investments Pool 1, LLC's Motion for Summary Judgment (#97) is **DENIED**;

IT IS FURTHER ORDERED that Defendant Diamond Point Homeowners' Association's Motion for Summary Judgment (#99) is **DENIED**;

IT IS FURTHER ORDERED that Plaintiff Bank of America, N.A.'s Motion for Summary Judgment (#98) is **GRANTED.** The Court declares that BANA's deed of trust in the property located at 1204 E. Hammer Lane, North Las Vegas, Nevada survived Diamond Point Homeowners' Association's nonjudicial foreclosure. The Court also declares that whatever interest Defendant SFR acquired in the property it takes subject to Plaintiff's first deed of trust.

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Plaintiff\Counterdefendant Bank of America, N.A. and against Defendants and Counterclaimant.

Dated this 26th day of September, 2019.

Kent J. Dawson
United States District Judge